IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KENNETH RANEY,

                    Plaintiffs,

    v.

STATE OF WISCONSIN,
GRANT COUNTY SHERIFF'S OFFICE,
OFFICER DUANE JACOBSON,
DA ANTHONY POZORSKI, and
All other persons know and unknown
Involved in this case,

                    Defendants.

OPINION and ORDER

20-cv-324-wmc

Under 42 U.S.C. § 1983, *pro se* plaintiff Kenneth Raney seeks injunctive and monetary relief arising out of his arrest and conviction on one count of operating under the influence of an intoxicant or other drug (first offense) in violation of Wis. Stat. § 346.63(1). *Grant Cty. v. Kenneth Raney*, No., 2017TR4074 (Grant Cty. Cir. Ct.). Raney names the following defendants: the State of Wisconsin, Assistant District Attorney Anthony Pozorsky, the Grant County Sheriff's Office, and Grant County Deputy Sheriff Duane Jacobson.[1] The State of Wisconsin and Assistant District Attorney Pozorsky are represented together ("State defendants") and have filed a motion to dismiss or for summary judgment (dkt. #9). The Grant County Sheriff's Office and Deputy Sheriff

---

[1] Raney also listed "all other persons know and unknown involved in this case" in the caption of his complaint, but he did not address the acts or conduct of any other defendant in the body of his complaint, nor has he sought leave to amend his complaint to include any other defendants or submitted proof of service on any other defendants. Accordingly, to the extent Raney intended to include additional defendants in this lawsuit, they are dismissed. *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed.").

Jacobson are represented together ("Grant County defendants") and also seek dismissal of this lawsuit (dkt. #15).

As detailed below, the court must grant both motions.  To begin, the State defendants are simply immune from suit, and the Grant County Sheriff's Office is not a proper defendant in an action under § 1983.  Moreover, neither Raney's allegations nor his opposition brief suggest any basis to amend his complaint to proceed against Grant County.  Finally, Raney's claim against Officer Jacobson will be dismissed since this court is precluded from re-litigating the reasonableness of Jacobson's decisions to pull over and arrest Raney.

BACKGROUND AND ALLEGATIONS OF FACT[2]

On September 1, 2017,[3] Raney was driving from a festival with his girlfriend, when he was pulled over by Deputy Sheriff Duane Jacobson.  Raney acknowledges that before the stop, he had consumed a 64-ounce alcoholic beverage over the course of three hours.

---

[2] For the purpose of the motions to dismiss, the following facts are taken from the parties' pleadings and referenced documents when viewed in a light most favorable to the non-moving party, Raney. *Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (citation omitted); *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014) (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)).  As appropriate, the court has also taken judicial notice of events related to Raney's court proceedings.  *See In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (state court orders "are public records and appropriate subjects of judicial notice") (citing *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); Fed. R. Evid. 901(b)(7)).  For that reason, the court need not construe defendants' motion as one for summary judgment.  *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.") (citing *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008)).

[3] Raney alleges that the arrest took place on September 1, 2018 (*see* Compl. (dkt. #1) 3), but given that the publicly available records of these proceedings show that all subsequent events took place in early 2018, the court has corrected that date.

Regardless, Jacobson purported to pull over Raney after receiving an anonymous tip that Raney was driving erratically, then observing Raney crossing the middle line.

After pulling him over, Deputy Sheriff Jacobson conducted a field sobriety test, as well as asked Raney to touch his finger to his nose and walk in a straight line heal-to-toe. Raney alleges that he has a medical condition in which his toes point out at an extreme angle, which he repeatedly told Jacobson prevented him from executing the heal-to-toe test. Nevertheless, Jacobson allegedly used this inability as an excuse to have Raney submit to a blood test, which he then claims was delayed. In the meantime, Jacobson searched Raney's car, apparently for alcohol.[4]

When Raney later provided a sample for a blood alcohol test, it showed a prohibited concentration level. Subsequently, Raney was charged in Grant County Circuit Court with one count of operating while intoxicated as a first offense in violation of Wis. Stat. § 346.63(1)(a), to which he pleaded not guilty. Through counsel, Raney also filed a motion to suppress the evidence obtained from the stop.

The trial court held an evidentiary hearing on the suppression motion, during which both Officer Jacobson and Raney testified. Jacobson testified that he received a citizen tip of an erratic driver, which led him to follow Raney and observe him cross the centerline of the highway multiple times before he pulled Raney over. Jacobson also testified that he smelled the "moderate odor of intoxicants" coming from Raney's vehicle, and Raney admitted consuming alcohol earlier that day. (Ex. 1-005 (dkt. #10-1) 3.) As for the field sobriety tests, Jacobson testified that Raney missed the heel-to-toe more than once, walked

---

[4] Raney also claims that Jacobson's search was broader than necessary, but he does not allege that Jacobson recovered any items of note from that search.

past the point he was told to turn around, and lost his balance while standing on one leg. (*Id.* at 3-4.) For his part, Raney testified vaguely about his perception that the area where he was walking was sloped, as well as his telling Jacobson that he was tired when carrying out the sobriety test. The court also received into evidence actual video footage of the encounter between Jacobson and Raney, as well as Raney's photographs of the highway where Jacobson conducted the sobriety test.

Ultimately, Raney's counsel argued that Jacobson lacked probable cause to arrest Raney for operating while intoxicated because Jacobson conducted the field sobriety test on a surface that was not sufficiently level. Rejecting this argument, the court denied Raney's motion to suppress. Specifically, the court observed that it was difficult to tell from Raney's photographs whether the ground was level, and even assuming a slope in the road, it was not a "significant or visible slope." (Ex. 1-005 (dkt. #10-1) 5.) The court further found that: Jacobson had observed "bad driving" by Raney before pulling him over; Raney admitted that he had been drinking; Jacobson smelled alcohol; and Raney failed aspects of the field sobriety test. Based on the totality of the circumstances, therefore, the court denied the suppression motion and the case proceeded to a jury trial, where Raney was convicted.

Proceeding *pro se*, Raney appealed his conviction to the Wisconsin Court of Appeals, raising numerous challenges to both the trial court's findings related to the suppression motion and to the evidence presented during the jury trial. That court found Raney's appellate briefing suffered from multiple deficiencies, most problematic being his failure to develop a cohesive legal argument. (*Id.* at 2.) Nonetheless, the court granted Raney leeway and addressed the merits of his arguments. Starting with the trial court's pre-trial rulings,

the court rejected Raney's argument that Jacobson lacked grounds to follow him based on an anonymous tip because his trial counsel and he had not raised this argument at the suppression hearing and, in any event, this argument lacked merit.  The court also rejected his claim of ineffective counsel for failing to challenge the voluntariness of his consent to a blood draw, having failed to raise that argument at any time, including in a post-conviction motion.  The court of appeals next rejected Raney's timely challenge to the field sobriety test, finding that the trial court's conclusion upholding it was not clearly erroneous, noting in particular that the photographs Raney submitted during the suppression hearing supported the trial court's finding.

As for the evidence presented at trial, the court of appeals rejected Raney's argument that Assistant District Attorney Pozorsky falsely represented that Raney "swayed during the [field sobriety] test administered by Deputy Sheriff Jacobson," since the jury reviewed the video footage showing the field sobriety test *and* Jacobson testified that Raney had swayed slightly.  Second, the court rejected Raney's undeveloped arguments related to his expert's testimony and Jacobson's delay in submitting Raney's blood for testing, particularly since Raney failed to submit evidence or authority suggesting that any delay resulted in the jury receiving inaccurate information.  Finally, Raney submitted a petition for review by the Wisconsin Supreme court, which was denied on March 19, 2019.  *See Grant Cty. v. Raney*, Appeal No. 2018AP700.

Nevertheless, in *this* lawsuit, Raney now claims that both the stop itself *and* the search that followed violated his Fourth Amendment and due process rights.  Indeed, Raney purports to challenge almost all of Jacobson's actions during and after the traffic stop, parroting arguments raised before the Wisconsin Court of Appeals, including that

Jacobson should not have responded to the anonymous caller and that when Jacobson started following, he only crowded the center line because he had been blinded by Jacobson's lights. Raney also challenges how Jacobson carried out the field sobriety test and his inappropriate delay in submitting Raney's blood sample to a lab for analysis. Finally, Raney further claims that when Jacobson documented the stop and field testing, he copied and pasted information from a prior OWI field sobriety test that improperly included an observation he was swaying, all of which resulted in improperly admitted evidence during his jury trial, as well as the assistant district attorney lying in describing him as swaying. Accordingly, Raney asks this court to set aside his state court conviction, dismiss that criminal case, and remove the conviction from his record. Raney also seeks compensatory and punitive damages.

## OPINION

Designed to test the complaint's legal sufficiency, dismissal under Rule 12(b)(6) is warranted only if no recourse could be granted under any set of facts consistent with the allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 563 (2007). "To survive a motion to dismiss under Rule 12(b)(6)," therefore, a plaintiff need only allege sufficient facts to (1) "state a claim for relief that is plausible on its face" and (2) give the defendant fair notice of what the claim is and the grounds upon which it rests. *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (quoting *Twombly*, 550 U.S. at 570); *see also Twombly*, 550 U.S. at 555. Under this plausibility standard, the court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of a claim are

not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681).   In evaluating the sufficiency of the complaint, the court must "draw[] all reasonable inferences in favor of the plaintiffs." *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008).

As an initial matter, Raney's request that this court overturn his conviction and clear his record is unavailable under § 1983.   Indeed, "[h]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . . even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)).   There is no indication in Raney's submissions that he intended to petition this court for a writ of habeas corpus under 28 U.S.C. § 2254, and the court will not recharacterize it as such.   *See Copus v. City of Edgerton*, 96 F.3d 1038, 1039 (7th Cir. 1996).  ("When a plaintiff files a § 1983 action that cannot be resolved without inquiring into the validity of confinement, the court should dismiss the suit without prejudice" rather than convert it into a petition for habeas corpus.).   Moreover, Raney may not be able to pursue relief under § 2254, because he is no longer in "custody" for his crime of conviction in Case No. 2017TR4074. Nor would the unavailability of habeas relief confer this court the authority to vacate his criminal conviction in a § 1983 proceeding.   As such, the court lacks subject matter jurisdiction to address Raney's requests for injunctive relief.

## II.    State of Wisconsin and ADA Pozorski

Next, defendants State of Wisconsin and Assistant District Attorney Pozorski are entitled to dismissal.   Although these defendants raise arguments under the *Rooker-Feldman*

doctrine, as well as issue and claim preclusion, the court will dismiss both as immune from liability for monetary damages.

The Eleventh Amendment of the United States Constitution prohibits federal courts from entertaining suits seeking monetary damages brought by private parties against a state without the state's consent. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). As such, the State of Wisconsin is immune from damages suits unless expressly consenting to suit. Likewise, to the extent Raney is pursuing a claim against ADA Pozorski in his official capacity as a state employee, he is immune from monetary damages. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1009 (7th Cir. 2000) ("Federal suits against state officials in their official capacities are barred by the Eleventh Amendment.") (citation omitted).

As a prosecutor, ADA Pozorski is also immune from suit in his individual capacity. "A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). Here, Raney challenges only Pozorski's handling of his criminal proceedings -- in particular, claiming that Pozorski misrepresented to the court that Raney appeared to be swaying when Jacobson was conducting the sobriety field tests. Given that Pozorski's alleged misrepresentation of the facts were directly related to the manner in which Pozorski prosecuted the OWI charge against Raney, he is shielded from liability for money damages. Accordingly, the State of Wisconsin and Pozorski's motion to dismiss will be granted.

### III.    Grant County Sheriff's Office

The Grant County Sheriff's Office is also entitled to dismissal because it is not a suable entity under § 1983, since a sheriff's office is merely a department of the county, not a separate legal entity subject to suit under § 1983.  *See Whiting v. Marathon Cty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004) ("[T]he Marathon County Sheriff's Department is not a legal entity separable from the county government which it serves and is therefore, not subject to suit.") (citation omitted).   Accordingly, the dismissal of Grant County Sheriff's Office will be with prejudice.

Moreover, to the extent Raney could seek leave to amend his complaint to proceed against Grant County, his allegations do not support such a claim.   Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), to state a claim against a county, plaintiff must allege that the constitutional violation was "caused by: (1) an official policy adopted and promulgated by [the county's] officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority."  *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Raney's allegations here do not even suggest a challenge to a policy or custom of Grant County.  Instead, Raney principally alleges that Deputy Sheriff Jacobson copied and pasted information from prior OWI reports, rather than some constitutionally infirm policy or custom of the department as a whole.  Even Raney's assertion that the lack of a functional dashboard camera reflects a consistent practice of Grant County police officers falls short, since a custom cannot be established through a single incident.  *Palmer v. Marion Cty*, 327 F.3d 588 (7th Cir. 2003).  In any event, Raney does not link the absence of a

dashboard camera to any unconstitutional behavior by Jacobson, since his actions were captured by Jacobson's body camera and reviewed by the trial court, as well as a lay jury. As such, even assuming Raney would seek leave to amend his complaint to name Grant County as a defendant to pursue on a *Monell* claim for relief, such an amendment would be futile. Accordingly, the Grant County Sheriff's Office is entitled to dismissal with prejudice.

## IV. Deputy Sheriff Jacobson

That just leaves Raney's claim against defendant Jacobson, the deputy sheriff responsible for conducting the traffic stop, arresting plaintiff and taking his blood sample. Jacobson asserts that dismissal is appropriate under the *Rooker-Feldman* doctrine and on the ground of claim preclusion. Although *Rooker-Feldman* does not prevent this court from exercising jurisdiction over plaintiff's claim against Jacobson, the state court proceedings directly addressing his challenges to the traffic stop and search preclude this court from re-litigating that question.

The *Rooker-Feldman* doctrine stands for the proposition that "lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring); *see also Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995) (noting that dismissal under *Rooker-Feldman* is for lack of jurisdiction, which is "based on the principle that inferior federal courts cannot reexamine the decisions of state tribunals in civil litigation." (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). As such, the *Rooker-Feldman* doctrine prevents a party "complaining of an injury

10

caused by [a] state-court judgment" from seeking redress in a lower federal court. *See Exxon Mobil Corp. v. Saudi Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *see also Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). *Rooker-Feldman* further bars federal review of allegations or claims that implicate or are so "inextricably intertwined" with that state court judgment. *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008); *see also Wright v. Tackett*, 39 F.3d 155, 157-58 (7th Cir. 1993) (per curiam). The determination of whether a claim is "inextricably intertwined" "hinges on whether the federal claim alleges that the injury was caused by the state court judgment or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Taylor v. Federal Nat'l Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004).

Although the relief Raney seeks certainly attacks the conviction itself -- indeed, although unavailable under § 1983, one form of relief plaintiff seeks is the reversal of that conviction -- plaintiff's claim against Jacobson is independent from his challenge to his conviction. He claims that the entire traffic stop violated his Fourth Amendment rights. However, plaintiff's conviction by the jury arguably did not resolve that question. The Court of Appeals for the Seventh Circuit has thus concluded that the *Rooker-Feldman* doctrine does not apply to situations like plaintiff's.

Specifically, in *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), the court made it clear that the *Rooker-Feldman* doctrine should be "confined to cases in which the defendant in the state court is seeking to undo a remedial order of some sort." *Id.* at 1004. The court explained that broader application of the *Rooker-Feldman* doctrine "would be inconsistent with cases in which, for example, police officers are sued under 42 U.S.C. § 1983 for having fabricated evidence that resulted in the plaintiff's being convicted in a state court." *Id.* at

1005; *see also Nelson v. Murphy*, 44 F.3d 497, 503 (7th Cir. 1995) ("Plaintiffs avoid [the *Rooker-Feldman* doctrine], however, because they challenge [an underlying constitutional violation] independently of the courts' approval of that [violation].").

While the *Rooker-Feldman* doctrine does not necessarily preclude this court from exercising jurisdiction over plaintiff's Fourth Amendment claim against Jacobson, however, he is still entitled to dismissal of Raney's claim against him based on issue preclusion. *See Virnich v. Vorwold*, 664 F.3d 206, 215 (7th Cir. 2011) (federal courts apply state law preclusion). In Wisconsin, ruling on an issue raised and necessarily determined in a proceeding that ended in a valid judgment may be preclusive in later litigation. *Rille ex rel. Rille v. Physicians Ins. Co.*, 300 Wis. 2d 1, 728 N.W.2d 693, 702 (2007). Wisconsin "courts apply issue preclusion as a matter of equitable discretion." *Kaprelian v. Bowers*, 460 F. App'x 597, 599 (7th Cir. 2012) (citing *Rille*, 300 Wis. 2d 1, 728 N.W.2d at 702).

To determine whether issue preclusion applies here, the court must look to a variety of factors, including:  whether the party opposing issue preclusion could have obtained review of the adverse decision, whether the earlier proceeding was of significantly lower quality or scope, whether the parties' burdens have shifted since the earlier proceeding, and whether the party opposing preclusion lacked an adequate incentive or opportunity to litigate the issue fully. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210, 594 N.W.2d 370, 375 (1999).

While denial of a motion to suppress is not itself a final judgment, Wisconsin courts accept that preclusion may still be warranted with respect to such a motion. For example, in *Kaprelian v. Bowers*, 460 F. App'x 597 (7th Cir. 2012), the Seventh Circuit addressed the preclusive effect of an order denying a defendant's motion to suppress. Kaprelian was

arrested pursuant to a search of his home, then charged with false imprisonment and second-degree sexual assault. During the search, officers gathered evidence that included Kaprelian's videos, magazines and photographs. Kaprelian filed a motion to suppress, challenging the constitutionality of the search of the house on the ground that the consent as invalid. The state court denied Kaprelian's motion, finding the consent valid and that exigent circumstances justified the search. Despite then pleading no contest to the criminal charges and being sentenced to prison, Kaprelian nevertheless sued the officers involved with the seizure of his videos under § 1983, claiming they had violated his Fourth Amendment rights.

Although the district court proceeded to resolve the merits of his Fourth Amendment claim in favor of defendants, the Seventh Circuit concluded under Wisconsin law that plaintiff was precluded from relitigating his Fourth Amendment challenge, reasoning that the state court fully addressed that challenge already, and there was "nothing unfair" about applying issue preclusion because:

> Kaprelian challenged the adverse suppression ruling on direct appeal, and there is no reason to suspect that the quality of the Wisconsin suppression hearing fell below the threshold required to justify giving the ruling preclusive effect. Kaprelian had a strong incentive to vigorously challenge the search in the criminal proceeding, and the burden of proof has not shifted in his favor.

*Id.* at 600.

While Raney does not respond to Jacobson's preclusion defense, there is little question that he received a full and fair opportunity to litigate his Fourth Amendment claim against Jacobson between the robust criminal proceedings before the trial court and Wisconsin Court of Appeals. In the trial court, Raney received the opportunity to develop

13

a full factual record in support of his claim that Jacobson's handling of the traffic stop violated his Fourth Amendment rights.   As detailed above, the trial court held an evidentiary hearing on his motion to suppress, receiving testimony from both Raney and Jacobson, as well as reviewing Raney's photographs and the video footage available from the traffic stop.   Moreover, even after the court concluded that the arrest was supported by probable cause and denied the motion to suppress, Raney appealed the trial court's ruling to the Wisconsin Court of Appeals, including additional arguments related to Jacobson's initial decision to pull him over and challenged certain evidentiary components of the trial.   Finally, while that court noted Raney's *pro se* submissions were difficult to understand and largely undeveloped, it certainly attempted to address all the issues Raney raised unless plainly forfeited or not properly before that court.   Accordingly, there can be no question that Raney had the opportunity to obtain review of the trial court's order on his motion to suppress.

This court has no reason to doubt the quality of the trial court or Wisconsin Court of Appeals' handling of Raney's Fourth Amendment challenge to his traffic stop, arrest, and blood draw.   Furthermore, like Kaprelian, Raney's burden of proof has not shifted in his favor in this case, and in facing a criminal conviction, he had a strong incentive to challenge Jacobson's actions vigorously in that proceeding.   Accordingly, the trial court's decision denying Raney's motion to suppress precludes him from re-litigating the constitutionality of Jacobson's decision to pull him over, arrest him, or conduct the blood draw, and this court will grant Jacobson's motion to dismiss in its entirety.

ORDER

IT IS ORDERED that:

(1)     Defendants Anthony Pozorski and State of Wisconsin's motion to dismiss or for summary judgment (dkt. #9) is GRANTED.

(2)     Defendants Grant County Sheriff Office and Duane Jacobson's motion to dismiss (dkt. #15) is GRANTED.

(3)     All other defendants in this lawsuit are DISMISSED.

(4)     The motion for extension (dkt. #26) is DENIED as moot.

(5)     The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 20th day of April, 2021.

> BY THE COURT:
>
> /s/
>
> WILLIAM M. CONLEY
> District Judge